Linda "DOE"

v.

Richard E. MARSHALL.

Civ. A. No. 94–6382.

United States District Court,
E.D. Pennsylvania.

April 13, 1995.

Philip Matthew Stinson, Sr., Valley Forge, PA, for plaintiff.

Michael Brodie, Brodie & Rubinsky, Philadelphia, PA, for defendant.

## MEMORANDUM

JOYNER, District Judge.

Before this Court today is Defendant's Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant seeks an order requiring Plaintiff to file a more definite statement of the Complaint pursuant to Federal Rule of Civil Procedure 12(e).

This litigation arises out of Plaintiff's Complaint against her former college professor alleging *quid pro quo* sexual harassment on the basis of her known mental disability. Plaintiff's Complaint has three Counts. The only Count on which federal jurisdiction may be invoked is the third, in which Plaintiff seeks relief under 42 U.S.C.A. § 1983 (West 1994) for alleged violations of the Fourteenth Amendment of United States Constitution,[1] the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213 (West 1994) (ADA), and the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–796 (West 1993) (RHA).[2]

## STANDARD

In considering a 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990).

In ruling upon such a motion, the Court must accept as true all of the allegations in

---

1. Plaintiff does not appear to allege any violations of Due Process under the Fourteenth Amendment. However, Plaintiff raises Title IX claims in her response to Defendant's motion. Plaintiff complaint, so we will not now address that issue.

2. Although not specifically set forth in the Complaint, Plaintiff appears to invoke the doctrine of pendent jurisdiction with respect to Counts One

and Two of her Complaint. These two counts allege the common law torts of intentional infliction of emotional distress and tortious interference with contract.

Defendant moves to dismiss Count Three. Should the Third Count be dismissed, Defendant also seeks dismissal of Plaintiff's pendent state claims.

the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

In considering a motion for a more specific pleading pursuant to Rule 12(e), the court must weigh whether the Complaint is "sufficiently intelligible for the Court to be able to make out one or more potentially viable legal theories on which the claimant might proceed." 5a Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376 (1977).

## DISCUSSION

### A. Parties To Suit

■ In all three of her federal claims, Plaintiff asserts that she is suing Montgomery County Community College since she is suing Defendant in his official capacity as an agent and official of the College. However, the College is not named as a party to her complaint. Under *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), Plaintiff must amend her Complaint to join the College and secure the College's rights to notice and an opportunity to be heard. Thus, Defendant's motion for a more specific pleading as it relates to the parties subject to suit is GRANTED.

### B. Equal Protection Claim

■ Defendant moves for dismissal or for a more definite statement on the ground that Plaintiff's complaint avers no discrimination in derogation of the Equal Protection Clause of the Fourteenth Amendment. To allege a violation of the Fourteenth Amendment such that relief may be granted through § 1983, a plaintiff must allege that: 1) a government official acted under color of state law; and 2) that official's actions deprived the plaintiff of a Constitutionally protected right.

Defendant does not dispute that he is a state actor for purposes of this motion. Thus

there is no dispute as to the first requirement of a § 1983 action.

Defendant does dispute Plaintiff's allegations that he engaged in an arbitrary classification or acts of discrimination against Plaintiff under the Equal Protection Clause. He contends that Plaintiff does not allege "disparate treatment" between herself and other college students sufficient to state an Equal Protection violation. In support of his argument he cites *Baby Neal v. Casey*, 821 F.Supp. 320 (E.D.Pa.1993).

In *Baby Neal*, children diagnosed as HIV positive were classified as unadoptable while HIV negative children were not. The Third Circuit ruled that the plaintiffs could proceed to trial because they had demonstrated disparate treatment between two classes of minor children. *Id.* Defendant argues that Plaintiff has not demonstrated disparate treatment as presented under the facts of *Baby Neal*. Defendant asserts, therefore, that he is entitled to summary judgment on Plaintiff's Equal Protection claim.

Plaintiff responds that she was the recipient of disparate treatment because her professor's comments, notes, and behavior created a hostile learning environment toward women as compared to other students. Moreover, she alleges that his actions ultimately excluded her from meaningful course work on the basis of gender.

The Third Circuit has not addressed whether these acts support a claim of disparate treatment. Plaintiff relies upon the reasoning of *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir.1988). In *Lipsett*, the First Circuit held that an Equal Protection claim could be premised on the fact that university faculty: 1) excluded a plaintiff student from meaningful course work; and 2) created a hostile learning environment on the basis of gender by making explicit sexual comments. *Id.* at 901–902.

We find *Lipsett* more analogous to the present facts than *Baby Neal*. Here plaintiff has pleaded exclusion from meaningful course work and a hostile learning environment. She alleges that she was the recipient of sexually explicit comments and notes from her professor. She alleges that these com-

ments and notes were directed toward her on the basis of her gender.

Although we are not bound by *Lipsett,* we find that Plaintiff has sufficiently pleaded a violation of the Constitutionally protected right to an equal educational opportunity. Further, we find that this claim is sufficiently intelligible to give the Defendant notice of the claim against him. Accordingly, Defendant's motions for dismissal or for a more specific pleading on the Equal Protection claim are DENIED.

### C. Title II of the ADA and the RHA

Defendant moves for dismissal or for a more definite statement of Plaintiff's ADA and RHA claims. First, Defendant argues that Plaintiff may not seek recovery under Title II of the ADA from Defendant, as Title II proscribes discrimination by public entities against disabled people. *See* 42 U.S.C.A. § 12115. In support of his motion, Defendant argues that the ADA does not apply to him because: 1) he is not a public entity; 2) the alleged harassment was of a private nature and the ADA was not designed to cure private behaviors of state actors; and 3) the alleged harassment was not perpetrated on the basis of Plaintiff's disability.

■ Defendant's first contention is that the ADA does not apply to him as he is not a public entity. Plaintiff responds by asserting she is bringing her ADA and RHA claims against the College as an entity. As stated previously, Plaintiff's complaint must be amended to reflect this assertion. We find that her assertion that she is suing Defendant in his official capacity is sufficient to demonstrate suit against a public entity.

■ Defendant's second contention is that Plaintiff's complaint should be dismissed as the ADA was not designed to cure private harassment against individuals by employees of public entities. Defendant cites no case law in support of this contention, but instead looks to the legislative history of the ADA. Defendant correctly asserts that the purpose

of Title II of the ADA is to require public entities to make "reasonable accommodations" for disabled people. However, Defendant urges these accommodations should be solely structural.

■ The purpose of the ADA is broad in scope. Section 12131 of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."[3] The plain meaning of the statute dictates that public actors may not exclude disabled people from the services of a public institution. Thus, harassment by a public actor such as Defendant falls within the ambit of the Act if on the basis of her disability, he excluded Plaintiff from services offered by the College.

■ Defendant's third argument is that Plaintiff was not denied a service of a public entity on the basis of her disability. In support of this contention, Defendant points to the fact that Plaintiff's disability did not manifest itself until after he engaged in the alleged conduct.

Plaintiff alleges, however, that Defendant learned of her disability and knowingly sought to take advantage of her on that basis. In fact, Plaintiff alleges that Defendant "stepped up" his behavior upon learning of her disability. Furthermore, she alleges that his actions ultimately forced her to miss classes and that her grades suffered. Thus, we find that Plaintiff sufficiently pleads that Defendant deprived her of the benefit of an education on the basis of disability.

Plaintiff has alleged that she was a disabled person under the meaning of the Act, and that she was denied a benefit or service of a public entity on the basis of that disability. These are sufficient allegations to state a claim under the ADA. Accordingly, Defendant's motions to dismiss or alternatively for a more specific pleading are DENIED as to claims under the ADA.

---

**3.** Plaintiff is "disabled" within the meaning of the ADA because "[e]motional conditions such as anxiety and depression are disabilities included within the meaning of 'disabled.'" *Weiler v.*

*Household Finance Corp.,* No. 93 C 6454, 1994 WL 262175 at *3 (N.D.Ill. June 10, 1994) (citations omitted). Thus, it is clear that Plaintiff is a qualified individual under the ADA.

Defendant also moves to dismiss Plaintiff's RHA claim on grounds identical to those asserted for dismissal of Plaintiff's ADA claim. For the same reasons as those supporting the ADA claim, we hold that Plaintiff has already pleaded facts sufficient to state a RHA claim. Defendant's motions to dismiss or alternatively for a more specific pleading are DENIED as to claims under the RHA.[4]

Rosalie BRADFORD and
Robert S. Bradford

v.

AMERICAN MEDIA OPERATIONS, INC.

Civ. A. No. 94–6536.

United States District Court,
E.D. Pennsylvania.

April 17, 1995.

---

4. Although Plaintiff requests compensatory, punitive and equitable monetary relief, Defendant is correct in asserting that Plaintiff may not recover compensatory or punitive damages for emotional distress under the RHA. *See United States v. Forest Dale, Inc.*, 818 F.Supp. 954, 970 (N.D.Tex. 1993); *Turner v. First Hosp. Corp.*, 772 F.Supp. 284, 288 (E.D.Va.1991). On the other hand, this court is empowered to award equitable relief including damages under the RHA. *See Shuttleworth v. Broward County*, 649 F.Supp. 35, 38 (S.D.Fla.1986).

Nina E. Perris, Philadelphia, PA, for plaintiffs.

Slade R. Metcalf, New York City, Marc J. Zucker, Philadelphia, PA, for defendant.

## MEMORANDUM

DALZELL, District Judge.

American Media Operations, Inc. has moved to dismiss this libel complaint under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment, because it contends this action is time barred under the Uniform Single Publication Act, codified at 42 Pa.Con. Stat.Ann. § 8341. Because the parties have supplemented their briefs with affidavits and a deposition transcript, we shall treat the motion as one for summary judgment. Fed. R.Civ.P. 12(b). For the reasons that follow, we shall grant the motion.[1]

*Factual Background*

### A. The Article in Question

Defendant publishes a weekly newspaper called *Star*,[2] which some courts with justice have characterized as a tabloid.[3] Rosalie Bradford and her husband, Robert S. Bradford, allege that *Star* published a libelous article (appended to the complaint as Exhibit A), accompanied by three photographs, about them.[4]

---

2. According to the Enquirer/Star Group, Inc.'s June 23, 1994 SEC Form 10–K filing, "Enquirer/Star publishes *National Enquirer, Star, Weekly World News* and *Soap Opera Magazine*, with a current aggregate weekly circulation of approximately 7 million copies. In April 1994 the Company launched its newest publication, *Country Weekly. National Enquirer* and *Star* have the second and third largest single copy circulation, respectively, of any weekly periodical after *TV Guide*. The company derives over 85% of its revenues from circulation, predominantly single copy sales in supermarkets and other retail outlets, and the remainder from advertising and other sources. Enquirer/Star's subsidiary, Distribution Services, Inc. ("DSI"), arranges for the placement of the Company's periodicals in approximately 180,000 locations in the United States and Canada, representing, in the opinion of management, virtually complete coverage of periodical outlets."